### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**FIRST UNITED PENTECOSTAL CHURCH**

**CASE NO.  2:21-CV-04014**

**VERSUS**

**JUDGE JAMES D. CAIN, JR.**

**CHURCH MUTUAL INSURANCE CO**

**MAGISTRATE JUDGE KAY**

### TRIAL OPINION

The trial of this matter commenced on August 16, 2023, and ended August 18, 2023. Post-trial briefs were ordered and have now been submitted.

### INTRODUCTION

Plaintiff, First United Pentecostal Church (hereinafter referred to as "First United" or the "Church") owns property in DeQuincy, Louisiana.  On or about August 27, 2020, Hurricane Laura made landfall and on October 9, 2020, Hurricane Delta made landfall near Lake Charles, Louisiana causing damage to the Church's property.  The property consisted of: (1) the main sanctuary or New Church;[1] (2) the Old Church;[2] (3) the T.D. Cardwell Family Life Center (Family Life Center);[3] and (4) the bus barn.

Defendant Church Mutual Insurance Company ("Church Mutual") insured the properties during the relevant time period. The Policy included policy limits as follows: (1) main sanctuary or New Church for $2,750,000.00, (2) Old Church for $1,360,000.00,

---

[1] The New Church is sometimes referred to as Building #1 or the Sanctuary.
[2] The Old Church consisted of Building #2 (East Wing Sunday School), Building #3 (Old Sanctuary), and Building #4 (West Wing Sunday School).
[3] The Family Life Center is sometimes referred to as Building #5.

(3) the Family Life Center for $720,000.00, and (4) the bus barn for $60,000.00.[4] The Policy contains a 2% deductible as to each building.

## THE DISPUTE

First United contends that Church Mutual owes it additional funds for covered losses under the Policy that were unpaid. First United is seeking statutory penalties, attorney fees, and costs pursuant to Louisiana Revised Statutes 22:1892 and 22:1973 for Church Mutual's bad faith handling of its claim and failure to make timely payments for covered losses.

## TRIAL TESTIMONY

*Lynn Renlund*

Ms. Renlund is the designated corporate representative for Church Mutual. She testified about the claims file and Church Mutual policy. She became involved in the case about one month prior to her deposition on July 25, 2023. Ms. Renlund is a licensed Louisiana adjuster and is familiar with policy and claims handling procedure.

Ms. Renlund testified that Church Mutual has an affirmative duty to adjust claims fairly and promptly and make a reasonable effort to settle the claim as well as provide coverage. Additionally, she testified that the insurance company should interpret its policy to provide coverage rather than deny coverage. She testified that satisfactory proof of loss triggers the time period in which the Insurer is to make payment. Ms. Renlund explained that satisfactory proof of loss is flexible and can be many things – an adjuster's inspection, and/or receipt of an adjuster's report or estimate, invoices, or photographs.

---

[4] At the trial, Plaintiff's counsel withdrew any claims it may have had for the bus barn.

Ms. Renlund agreed that the Insurer must pay the undisputed amount of loss within 30 days and failure to do so is arbitrary and capricious conduct.  She testified that the Church Mutual desk adjusters were Nikki Gerdes and Christopher Vander Pluym, and Tony Bunn was the Church Mutual field adjuster who inspected the Church's properties on October 12, 2020.[5] Ms. Renlund indicated that it appeared that the desk adjuster erred in scheduling an inspection, thus, Church Mutual failed to inspect the property prior to Hurricane Delta making landfall. The Court notes that Church Mutual did not call these three adjusters as witnesses at the trial.

Through Ms. Renlund's testimony and documents admitted at trial, the Court learned that Mr. Bunn recommended an undisputed payment of $169,592.87 on November 20, 2020. Ms. Renlund testified that as of the date of trial, Church Mutual had made only 2 payments, the first on January 14, 2021, for $166,090.81 and the second payment on March 4, 2021, for $25,741.47. The Claim notes reflect that on October 15, 2020, a recommendation of $25,000 advance payment for tarping and other expense, however Church Mutual did not pay the advance payment despite the recommendation.[6]

First United provided Church Mutual its expert reports authored by Kermith Sonnier and Robert Wright on May 29, 2023.

Ms. Renlund testified that Church Mutual retained Lori Cox, to inspect and assess the Church's damages. In her report, Ms. Cox reported that Mr. Bunn missed items in his adjustment and additional money was owed; Ms. Renlund acknowledged that Church

---

[5] Plaintiff's exhibit 1, 566-567.
[6] Plaintiff's exhibit 2, p. 11.

Mutual owed additional funds, but that additional amounts were never paid. She explained that Church Mutual failed to pay the additional amount because it felt that it was necessary to inspect the roof to determine if the interior damage was caused by wind damage to the roof. Church Mutual waited almost 3 years after Hurricane Laura to make that roof inspection, despite the fact that the Claim Notes reflect that First United made the claim on September 7, 2020.

The Claim Notes indicate that Church Mutual would not pay for the roof damage because it was only cosmetic and not functional damage, despite the fact that Church Mutual had not yet inspected the roof and the first report did not indicate that the roof damage was cosmetic.

In an email from Gerdes to Susan Wood of Sedgwick, Gerdes mentions the many coverage details and roof exclusion and advises that she wants an adjuster to review the claim very "cautiously." At this point in time, Gerdes had not seen an inspection report.

The Claims Note reflect a conversation between Gerdes and Pastor Jackson. The Notes indicate that Pastor Jackson was frustrated with Church Mutual's handling of the 2017 tornado claim and again Gerdes mentions the exclusion for cosmetic damage regarding the Hurricane damage. The Claim Notes do not document any assurance of providing coverage.

The September 8, 2020 Claim Notes suggest that Rimkus Engineering would need to get involved to determine functional damage and distinguish prior tornado damage versus hurricane damage.

On September 9, 2020, the Church secretary started sending Church Mutual photographs of the damage with descriptions of the documented damage.[7]

A Letter dated September 13, 2020, authored by Gerdes,[8] to First United indicates that the claim is being investigated, and that a delay in reporting could potentially affect coverage. The letter also advised First United that it had a duty to mitigate the Church's damage and failure to do so could affect coverage.

Ms. Renlund agreed with counsel for Plaintiff that the very first payment was late and in violation of Louisiana law.

On October 13, 2020, Mr. Bunn sent Church Mutual a status report, which indicated that the Old Church[9] had significant damage to all slopes of the roof requiring roof replacement. There was also evidence of wind damage and water damage throughout the building due to roof damage, which included interior damage to the walls, ceilings, drywall and ceiling tiles throughout the building as a result of the rood damage.

Mr. Bunn reported damage to the Family life Center such as bowed exterior metal walls.  He also noted damage to the new main sanctuary evidenced by the separation of roofing panels, displacement of insulation, interior water intrusion, damage to the steeple and steeple windows.

Ms. Renlund testified that she just learned from an engineer and two experts who inspected the building in 2023, that there was no tarping on the new sanctuary roof where panels were lifted.   She also admitted that payment to First United for tarping was late.

---

[7] Plaintiff's exhibit 1.
[8] Plaintiff's exhibit 1, p. 21.
[9] The Old Church included three (3) connected buildings, the east Sunday School, west Sunday School and old sanctuary.

In denying the damage to the roof on the new sanctuary and Family Life Center, Ms. Renlund relied on the cosmetic damage exclusion for the entire metal roof, despite the report authored by Church Mutual's engineer that the roof panels had been lifted and needed replacement.

Also, the Claim Note dated November 5, 2020, by the desk adjuster indicated that he made a call to Church Mutual engineer Radenburgh, whose inspection revealed lifted panels with exposed insulation that had been sucked out from under the panels, and that the roof on the main sanctuary needed replacement. Ms. Renlund agreed that despite the fact that Church Mutual had not yet visited the site, adjuster Nikki states that Church Mutual would not be paying for cosmetic damages. It appears to the Court that the adjuster made the assumption that all roof damage was cosmetic, despite the fact that neither the adjuster, nor anyone else from Church Mutual had visited the site, and the engineer hired by Church Mutual recommended that the roof be replaced.

Ms. Renlund advised the Court that it would not be pursuing its defense regarding any preexisting tornado damage from 2017.

Mr. Renlund testified that there was preexisting damages to T.D. Caldwell Family Life Center and that Church Mutual had assessed any Hurricane damage to be below the deductible; however, Church Mutual performed no analysis to delineate damage as preexisting versus hurricane damage.

A review of Lori Cox's report notes illustrate that she noted that DeQuincy had sustained winds of 38 mph with wind gusts up to 68 mph before weather recording ceased on that date. It appears that no one from Church Mutual ever questioned Ms.

Cox's report notes despite numerous weather reports that reported wind gusts over 100 mph.

Ms. Renlund agreed that First United is owed more funds due to inspections by Church Mutual one week prior to this trial.

*Robert Wright*

Mr. Wright was accepted as an expert in structural and forensic engineer; he was hired by First United to determine damage caused by the Hurricanes. Mr. Wright was hired to determine what damages were caused by Hurricanes Laura and Delta.  He testified as follows.

Mr. Wright inspected the Church properties on March 29 and 30, 2023. Pastor Jackson and Mr. Sonnier were present. Pastor Jackson pointed out the 2017 tornado damage, so Mr. Wright did not include those damages in his report.  Mr. Wright informed Mr. Sonnier as to what damages he believed were caused by the Hurricanes so that Mr. Sonnier could properly estimate only Hurricane damages. Mr. Wright created an Executory Summary prior to preparing his Report of Site Observation and Forensic Evaluation[10] based on the windspeeds, rainfall, and his observations.

Mr. Wright determined the strongest winds to calculate the amount of pressure the buildings was subject to, which in turn leads to the type of damage one would expect. In his damage assessment, Mr. Wright concluded that the windspeed for Hurricane Laura at the Church were 126 mph and for Hurricane Delta, 79 mph. Mr. Wright testified that the

---

[10] Plaintiff's exhibit 57.

eye of Hurricane Laura went directly over the Church site; he explained that this is significant because the eye wall has the strongest wind speeds.

Mr. Wright concluded that the rainfall that occurred at the site for Hurricane Laura was 5-6 inches over a 24-hour period and for Hurricane Delta, 8-10 inches over a 36-hour period. Mr. Wright opined that the damage he found was consistent with the windspeed.

Mr. Wright testified that when he inspected the Church properties, the roof to the Old Church had been replaced.  He concluded that the New Church sustained wind damage from the Hurricanes that was more than cosmetic. He noted that the 2017 tornado damage occurred on the south end of the New Church, whereas the damage from the Hurricanes was on the north, west, and east end. Mr. Wright opined that the roof needed to be replaced rather than repaired because the roofing system had been breached; panels were pulled loose on one side, and the seams are in the opposite direction. Mr. Wright observed scratches, dents, holes and panels uplifted and/or separated at the seams on the New Sanctuary roof. He also observed where corrosion had already begun in scratches on the roof.

Mr. Wright explained that over a period of time if not replaced, the metal would corrode and shorten the life of the roof. He opined that the roof could corrode 1/6[th] of its thickness per year due to the proximity of the Gulf of Mexico. Mr. Wright concluded that the New Sanctuary/Church sustained damage that required replacement to bring the damages to pre-storm condition.

Mr. Wright also found other damages from the Hurricane including cracking in the EIFS cornice, window trim, veneer, and door trim on the exterior. He found interior

damage included steel framing, water infiltration, localized areas of corrosion, ceiling tiles, and cracked drywall.

Mr. Wright also inspected the Old Church and determined there was water damage throughout the interior, which included damage to the ceilings and drywall/sheetrock of the west and east classrooms.  As to the exterior, he observed separation of mortar joints on the exterior, cracking through the bricks, and separations of the brick veneer at windows. Mr. Wright observed damages to Buildings 2, 3, and 4 of the Old Church, which including water stains/marks in the interior, collapsed ceilings, and damaged floors due to water seepage. He opined that the asphalt shingle roofs on buildings 2, 3, and 4 needed to be replaced because of damage from the Hurricanes. In addition, the interior of these buildings was damaged by water intrusion as a result of the breaches in the asphalt shingle roof.

Mr. Wright observed that the Family Life Center had scratches and debris impact which would shorten the life of the roof. He also observed a peeled portion of an eave, metal vents with scratches, and debris impacts, flashing scratches, and the metal awning had blown off. He observed fasteners pulled loose, and damage to the metal siding including separations in the metal panels.

Mr. Wright opined that the cause of the damage he observed was the high winds, along with flying debris. Mr. Wright opined that the water intrusion caused damage to the interior of the buildings.

On cross examination, Mr. Wright was presented comparative photos taken before[11] and after Hurricane Laura,[12] of the brick veneer on the Old Church. The photos revealed the same cracking of the mortar between the bricks. Mr. Wright testified generally that prior cracking could be exacerbated by the Hurricanes.

Mr. Wright was presented photos of the Fellowship Hall/Gym of the Family Life Center that revealed damage to insulation prior to the Hurricanes. Mr. Wright was aware of some damage prior to the Hurricanes, but reiterated that he would not have included prior damage in his report.

*Carlton Jackson*

Pastor Jackson testified that the Old Church sanctuary was being remodeled at the time of the Hurricanes. Mr. Jackson visited the Church site immediately after Hurricane Laura passed and observed displaced debris and metal, shingles and metal and awnings blown off buildings and felled trees. He also observed damaged metal and shingle roofs and exterior damage to the Church buildings.

Pastor Jackson remained at the Church when Hurricane Delta made landfall. The roofs had been tarped prior to Hurricane Delta but the tarps were dislocated and/or damaged by the storm. Pastor Jackson testified that Church Mutual did not come to the property between Hurricane Laura and Hurricane Delta. The Church had requested funds to tarp the roofs after Hurricane Laura, but Church Mutual refused any payment despite

---

[11] Dated February 28, 2018.
[12] Defendant's exhibit 15 and Plaintiff's exhibit z taken April 5, 2023. (Admitted?)

informing First United that it would advance $25,000.00 for tarping. Church Mutual sent First United a letter reminding the Church of its duty to mitigate.

After Hurricane Delta, Pastor Jackson observed interior water damage from the roofs, including wet ceiling tiles, many of which had fallen. Pastor Jackson testified that there was more water damage for Hurricane Delta than Hurricane Laura.

When presented photographs taken October 12, 2020, by Church Mutual (Tony Bunn) of the Hurricane damage, Pastor Jackson explained the following exterior damages, including the Church sign, the cross on the steeple was dislocated, roof damage in various buildings, blown out glass, insulation sucked out from damaged roofs, damage to the east wing canopy, window blown out on the steeple,  damaged gutters and soffits, punctured metal, damaged vinyl underneath walkways and canopies,  damaged floors in the evangelist quarters, dislocated metal on walkways between buildings, and damaged metal siding on exterior walls.

Pastor Jackson explained the following interior damages, including water damage throughout the new sanctuary, mens' prayer room, ladies' prayer room, nursery, vestibule, offices, baptistry leaking from the roof, wet carpet, wet walls, and wet insulation. He also explained the interior damage to building 2 of the Old Church as follows: water damage on ceiling, sheetrock and wall paneling, and separating veneer. Building 3 of the Old Church had wet insulation and water damage from the roof. Building 4 of the old Church had damage to the ceiling tiles throughout, wet carpet and insulation, buckled floors, and wet, separated, and buckled paneling.

Pastor Jackson explained the damage to the Family Life Center as follows: water damage to the ceiling and leaking roof. Pastor Jackson also explained that the hanging insulation occurred prior to Hurricane Laura.

Pastor Jackson testified that as of this date, Church Mutual has made two payments on January 4, 2021, and March 4, 2021 as noted herein.

Pastor Jackson's daughter, Brooke reported the loss to Nikki Gerdes on behalf of Church Mutual on September 7, 2020. The Claim Notes indicate that First United has a duty to mitigate and notes the Policy's cosmetic exclusion. The first letter sent by Church Mutual to First United states that there may not be coverage due to the 10-day delay in reporting the claim. The letter further states that if the Church failed to mitigate its damages, there would be no coverage.  Finally, the letter indicated that Church Mutual reserved its right to deny coverage.

Pastor Jackson testified that Mr. Millican was hired to repair the Church with the funds that were available. The Church repaired the asphalt roofs, and the Sunday school department.  The Church spent all of the funds from Church Mutual on repairs and obtained a loan to make other repairs and for a remodeling project.  The Certificate of Completion for the repair indicated that the work was completed on February 11, 2021, for a total of $258,266.15.  Pastor Jackson explained that the repair work by Millican only included limited repairs to the extent the Church had the funds.

Pastor Jackson also testified as to the numerous cracks in the brick veneer and mortar.  He also testified that there were some cracks that were not new, some were exacerbated, but a majority of the cracks were new.  Pastor Jackson testified that they are

not making a claim for the bus barn, or the remodel to the interior of the Old Church, other than the damaged insulation.

*Kermith Sonnier*

Mr. Sonnier is a licensed public adjuster and owner of Accord Services, who writes estimates for consultants, attorneys, and contractors. Mr. Sonnier was hired by First United to provide an estimate of damages to the Church property as a result of Hurricanes Laura and Delta. Mr. Sonnier was accepted as an expert in public adjusting and construction.

Mr. Sonnier issued an Xactimate estimate of damages to the Church property and a subsequent Statement of Loss.[13] Mr. Sonnier testified that to the extent there was preexisting damage, those amounts should be removed.

Pastor Jackson and Robert Wright accompanied Mr. Sonnier and Greg Harrison as he inspected the buildings and was informed of some pre-existing damage and a remodeling project.  Mr. Sonnier testified that he did not include the remodeling in his estimate. He also noted that some temporary repairs had been done when he inspected. For example, the buckled paneling and certain ceiling tiles had been painted, but not removed and repaired permanently. Mr. Sonnier testified that some repairs were not permanent, other than the asphalt shingle roofs and further explained that the temporary repairs were made so the facility could be operational.

Mr. Sonnier also reviewed 670 photographs taken by Tony Bunn, hired by Church Mutual. He discussed causation with Mr. Wright to prepare his estimate of Hurricane

---

[13] P48 and P59.

damage. Mr. Wright advised Mr. Sonnier of the areas of damage he determined were caused by the Hurricanes. Mr. Sonnier testified that he included the Millican roofing and tarping invoice in his estimate.

Mr. Sonnier calculated damages for the New Church, which included the steel metal roof, insulation, drywall, texture painting and carpet. As to the standing seam metal roof, Mr. Sonnier inquired with a reputable metal roofing contractor as to the feasibility of repairing versus replacing the metal roof and was advised that this type of roof could not be repaired but would have to be replaced. Also, because the insulation was wet, it would have to be replaced. Mr. Sonnier explained that depending on the type of walls, two coats of paint and if drywall, one coat of primer and two coats of paint.

Mr. Sonnier testified that some of the stucco damage was new whereas some was preexisting. He also had inadvertently added the barn shed to the Old Church estimate, so he removed that estimate in his Statement of Loss as a revised estimate.

In the Old Church, he included in his estimate Millican's roofing invoice, drywall, paneling, acoustical ceiling, insulation, trim, flooring, bricks and soffit. He also included damaged awnings, cracked bricks, gutters, down spouts, facia, and vinyl. In the Family life Center, he included the metal roof, insulation, and exterior walls. He testified that the roof would need to be replaced because the screws were lifted.

Mr. Sonnier observed that the paneling throughout the Old Church was buckling, and the veneer was separating from the paneling. He opined that all of the paneling needed to be replaced. He determined that the acoustical tiles in the classroom, east and

west wing needed to be replaced because they could not be matched, and if painted, that would kill the acoustic.

Mr. Sonnier was questioned as to why he applied a blanket depreciation to the separate buildings when they were constructed some 40 years apart.  Mr. Sonnier had chosen a 10% across the board depreciation, which he believed was fair due to the condition of the buildings. Defense counsel showed Mr. Sonnier pictures of the metal roof on the Family Life Center, which indicated that there were potential repairs made to the roof.  Mr. Sonnier testified that it appeared there was a patch or "touch-up" done to a part of the roof.

Concerning the cracked bricks, Mr. Sonnier testified that it was not cost effective to repair and/or patch the bricks, but that all the bricks needed to be replaced.

Mr. Sonnier admitted that there was a mistake in his Xactimate estimate as to scaffolding. Mr. Sonnier estimates that scaffolding should be about 14-16 months for the entire project and the Xactimate estimate should be corrected to reflect 10% of the scaffolding cost.

Mr. Sonnier explained that the cleaning entailed daily cleaning, and a complete cleaning after the repairs were complete. He testified that if the bricks and stucco were taken out, he would reduce the amount of the cleaning with the percentage of the brick and stucco repairs as to the total estimate.

Mr. Sonnier testified that the fallen insulation in the Family Life Center was damaged more by the Hurricanes. The photos revealed that the insulation was hanging

down prior to the storm, but that water intrusion in the Family Life Center caused the insulation to get wet.

*Lori Cox*

Ms. Cox was accepted as an expert in structural and forensic engineering. She was hired by Church Mutual to inspect First United on May 31, 2023, specifically, the interior of the New Church, the Old Church and the Family Life Center. She also inspected the roofs on August 9, 2023. Ms. Cox authored a report on damages as to the Church's property.

Ms. Cox testified that she found no damage to the Family Life Center as a result of Hurricane Laura. Ms. Cox's August 9, 2023 inspection of the Family Life Center revealed that the metal roof had been repaired with metal patches and sealant on the fasteners, and white sealant on or around the Fiberglass skylights.

Ms. Cox also inspected the interior of the New Church in May of 2023.  She observed light staining and sagging ceiling tiles, and repairs that had been made to the drywall. She also inspected the roof; Ms. Cox found damage on the north edge of the building, and she noted what appeared to be previous repairs. Ms. Cox opined that the north end rake lines on the east and west sides were damaged, which she calculated to be 640 square feet. She estimated about 2500 square feet total for both sides. Ms. Cox found no other damage to either the interior or exterior of the building.

Ms. Cox did not address any damages to the Old Church (Buildings 2, 3, and 4); she was unaware of what repairs had already been made when she inspected the buildings. She testified that her scope of work did not include assessing damage for any

buildings (interior and exterior) or roofs that had already been repaired. Her report only included the New Church.

Conclusion 2 in the Cox report states that the repaired roof damage was attributed to the 2017 tornado. Ms. Cox testified that she had read the Remkus report which indicated no roof damage, other than the one missing shingle, as a result of the 2017 tornado. Ms. Cox completed her report prior to inspecting the roof. She also indicated in her report that the windspeeds in DeQuincy were 38 mph with 3-second wind gusts of 68 mph. Ms. Cox agreed that Hurricane Laura was a major storm, however she did not indicate that in her report.

Ms. Cox estimated the damages to the New Church/main sanctuary to be approximately $263,000. Church Mutual paid nothing for the New Church because it assessed the damage to be below the $55,000.00 deductible.  Ms. Cox also noted in her report certain damages that were not in Mr. Bunn's estimate/report.

The Court finds that the majority of Ms. Cox's report is not credible and gives very little weight to her opinions and/or assessment of damages. First, the Court finds it incredible that Ms. Cox would not be able to determine and report the correct wind speeds for Hurricane Laura, almost three years post-storm considering the abundance and ease of finding that information. Additionally, Ms. Cox testified that her assessment of damages was very limited in scope.  Another significant area of concern includes Mr. Neil Wright's assessment of damages to the metal roof of the New Church.  Mr. Neil Wright inspected the New Church on May 30, 2023, with Ms. Cox,  and prepared an estimate of damages to the metal roof of the New Church Sanctuary. Ms. Cox report

limited the roof to repairs of 2,500 square feet whereas Mr. Wright concluded that the roof needed replacement at a cost of $518,817.26.[14] The Court finds that the opinions of Mr. Robert Wright, Mr. Sonnier and Mr. Neil Wright, that the metal roof needed replacement as opposed to repair is more credible.

*Bryan Millican (by deposition)*

Mr. Millican is a member/President of Millican Roofing and Construction, LLC. Mr. Millican prepared the bid and ultimately a contract for making repairs to the Church properties. Mr. Millican testified that he put an emergency tarp on the roof due to water entering the Church. He also performed work on Buildings 2, 3, and 4 of the Old Church, and temporary repairs on the roof of the New Church. Additionally, Mr. Millican made repairs to the interior of the sanctuary of the New Church and interior and exterior work on Building numbers 2, 3 and 4 of the Old Church, including replacing the roofs to these three (3) buildings.

Mr. Millican testified that he invoiced the Church for all work performed, and that the Church paid for some of the repair work out of its own pocket and/or from donations because the insurer would not pay.

*Steven Lott (by deposition)*

Mr. Lott is a public adjuster hired who inspected and took photographs of the Church property for the 2017 tornado and inspected and provided a damage estimate for

---

[14] The Court takes judicial notice of Mr. Neil's roof estimate that was included in the undersigned's bench book provided by Defendants at the bench trial of this matter. At the completion of the trial of this matter, the undersigned took note of the estimate and instructed that it be admitted into the record. See Day 3 of rough transcript p. 117. Doc. 57-5, pp. 141-149.

the 2020 Hurricanes. However, when the Church hired counsel to represent it, Mr. Lott's services were terminated.

*Exhibits*

Exhibits that were admitted at the trial can be found in the record at Docs. 55 and 57.

## FINDINGS BY THE COURT

After considering all of the testimony, numerous photographs, and exhibits, the Court finds that Church Mutual was in bad faith in its adjustment of First United's claim. The Court further finds that Church Mutual failed to timely make any payments regarding the claim. See *French v. Allstate Indemnity Co.*, 637 F.3d 571 (5th Cir. 4/4/2011) (If part of a claim for property damages is not disputed, the failure to pay the undisputed portion of the claim within the statutory delay will subject the entire claim to penalties.) *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359 (5th Cir. 2009) (quoting *Sher v. Lafayette Ins. Co.*, 973 So.2d 39, 60 (La. App. 4 Cir. 2007)). Church Mutual withdrew any defense it had as to preexisting damage from the 2017 tornado. During the trial, counsel for Plaintiff withdrew its claim as to the bus barn.

The Court further finds based on the evidence presented at trial that Church Mutual's handling of the claim was arbitrary and capricious, and therefore in violation of Louisiana Revised Statute 22:1892. As such, First United is entitled to its unpaid losses, statutory penalties, attorney fees and costs.

The Court finds that the Xactimate estimate prepared by Mr. Sonnier is a credible adjustment, with the following reductions.

The Court finds that Church Mutual met its burden of proof as to the exclusion for cosmetic damage to the roof of the Family Life Center, and Plaintiff failed to prove interior damages; however, the Court finds that the exterior walls to the Family Life Center were damaged and covered by the insurance policy. Additionally, the Court finds that the bricks/masonry and EIFS/stucco were pre-existing, and thus, not covered. The Court reviewed Church Mutual's position regarding the brick/masonry replacement and notes that there were additional costs to account for line-item estimates of prep and post masonry work and stucco repair that should be removed from Sonnier's Xactimate estimate. Furthermore, the Court finds that the suggested reduction to the Sonnier Xactimate estimate for the brick/masonry replacement and stucco repair provided by Church Mutual is accurate with the exception noted in footnote 13 herein.

The Court further finds that there was an error as to the scaffolding as noted by Mr. Sonnier and Church Mutual and admitted in First United's post-trial brief. Mr. Sonnier testified that the correct amount of the scaffolding should be approximately 10% of the total reflected in the Xactimate estimate. Church Mutual complains that the estimate to repair the asphalt should be removed because it is not covered. The asphalt repair is included in "Other Structures" and the Sonnier's Statement of Loss specifically excludes "Other Structures" and therefore will not be included in the Court's calculation of damages.[15]

The Court calculates First United's damages as follows:

May 29, 2023, Sonnier Xactimate Damage estimate

---

[15] P59.

| | |
|---|---|
| NEW CHURCH | $767,087.28 |
| OLD CHURCH | $722,795.71[16] |
| T.D. CALDWELL FAMILY LIFE CENTER | $  81,874.46[17] |
| LESS DEDUCTILBES | ( $96, 600.00) |

TOTAL UNPAID  LOSS                                          $1,475,157.45

LESS REDUCTIONS FOR ERROR AND NON-COVERAGE ITEMS

| | |
|---|---|
| Preexisting cracks to masonry - | ($297,637.51)[18] |
| Preexisting crack to EFIS | (  $23,937.37) |
| Scaffolding ($58,288.56 less 90%) | (  $52,459.70)[19] |
| TOTAL REDUCTIONS | ($374,034.58) |

NET UNPAID TOTAL LOSSES                                   $1,101,122.87

LESS: PRIOR PAYMENTS                                      ($191,832.28)[20]

NET POLICY DAMAGES OWED TO FIRST UNITED      **$  909,290.59**

PENALTIES ($1,101,122.87+$191,832.28[21]=$1,292,955.15)X.50      $ 646,477.58

TOTAL DAMAGES + PENALTIES                             **$1,555,768.16**

ATTORNEY FEES x 1/3 contingency fee                   $   518,070.80

**TOTAL AWARD**                                           **$2,073,838.96**

        In addition, First United is entitled to its costs for pursing its claim to trial.

Accordingly, the Court will address the costs after First United submits a detailed

summary of costs with supportive documentation/invoices.

---

[16] P59, Accord Statement of Loss removed metal roof inadvertently included to Building 1 (Old Church). See note, p. 2, Doc. 55-22; Day 2 transcript, p. 227.
[17] P48, p. 155; exterior walls, at lines 969-1008, pp. 78-82, P48.
[18] P48, pp. 4-14 (line 1215 for 21.47 included on EFIS adjustment)
[19] P48, p. 164.
[20] $166,090.81 +25,741.47.
[21] Payments made late.

## **CONCLUSION**

For the reasons set forth herein, the Court will enter judgment in favor of Plaintiff, First United Pentecostal Church and against Defendant Church Mutual Insurance Company, SI for a total award of **$2,073,838.96**.

**THUS DONE AND SIGNED** in chambers on this 8th day of September, 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**